## Martin et al. v. Goble et al.

April 21, 1944.

Joe Hobson for appellants.

Combs & Combs for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming in part and Reversing in part.

Joel D. Martin died intestate on February 18, 1899, leaving surviving him a second wife, Amy Martin, four

children born of his first marriage, and five children born of his second marriage. The children born of the first marriage were William D., Thomas J., Alice, and Mollie, who married A. M. Spears and died prior to the institution of this action; and the children born of his second marriage who survived him were Jane Goble, Maggie Marshall, Anna B. Cyphers, and Rhoda Cyphers. In July, 1891, Joel Martin and his second wife had conveyed to his first wife's children and their grandmother, Amy McGuire, mother of his first wife, a tract of land known in this record as the Wells Branch tract, supposedly containing 165.6 acres, less a two-acre tract which later in the same year Martin and his wife conveyed to J. D. and G. W. Harris. Appellants contend that the Wells Branch tract actually contained not more than 50 acres; and while the exact acreage conveyed is not in our opinion material in this controversy, the location and character of the 2-acre tract excepted from the conveyance and the circumstances under which it was subsequently acquired by two of the first group of children are of great importance. Martin was heavily indebted, and the consideration for the conveyance of the Wells Branch tract, less the 2 acres, appears to have been the grandmother's agreement to pay the mortgage indebtedness against the land amounting to $145.75. The deed recited that the grandmother, Amy McGuire, should have the control of the land during her life, after which, the title was to vest in the four children absolutely.

This litigation was inaugurated by the institution of an action on August 31, 1936, by the four surviving children of the second group against William R. Goble, whose claim as the grantee of W. D. Martin's alleged undivided interest in the land owned by Joel D. Martin at the time of his death, and known in this record as the "home place," will be hereinafter noticed. By an amended petition which named as defendants the surviving children of the first group and the descendants of those who had died, the plaintiffs sought to quiet their title to the home place allegedly acquired by a lost deed. In the interim between the filing of the two pleadings, the Kentucky West Virginia Gas Company instituted an action against William R. Goble and the members of both groups, seeking, in view of the controversy, the advice of the Court as to whom it should pay accruing royalties under a mineral lease executed on October 12,

1922, covering the home place; and on January 30, 1937, the two actions were consolidated. It was alleged in one of appellees' pleadings that it was intended by Joel Martin that the conveyance of the Wells Branch tract to the children of his first marriage should be in full of their interest in his real estate. However, the judgment. appealed from awarding the home place, consisting of 187.77 acres, and the royalties therefrom, to the children of his second marriage, was obviously predicated upon appellees' allegation and proof that three of the four children of the first marriage had by a deed subsequently lost, conveyed to the second group the home place, and that the other child of the first marriage, Mollie, an infant at the time the conveyance was made, had ratified the transaction. That there was positive affirmative testimony showing the execution and delivery of the deed must be conceded, but appellants insist that this testimony is unbelievable because of the inadequacy of the consideration which appellees claim induced its execution. Since that consideration consisted of the two-acre tract above referred to, it becomes necessary to set forth its situation with reference to the Wells Branch tract and the circumstances under which it was acquired by the children of the first marriage.

Amy McGuire died intestate leaving a large landed estate, a portion of which was inherited by her grandchildren born of Joel Martin's first marriage whom we have so frequently referred to as the first group. In effecting a division among themselves of the real estate inherited from their grandmother, and the Wells Branch tract conveyed to them by their father, it became necessary, or at least desirable, that they acquire the two-acre tract which had apparently been carved out of the Wells Branch tract. While the details of this division are not shown, other than that on December 29, 1900, the two-acre tract was conveyed by J. D. Harris and G. W. Harris to Thomas Martin and Mollie Martin (Spears), and that Thomas Martin acquired the Wells Branch tract, what took place may be gathered from the following excerpts from the testimony of G. W. Harris who was related to the parties, the administrator of Joel Martin's estate, and one of the two brothers to whom Joel Martin had conveyed the two-acre tract:

"They (the first group) had that farm on the right of the road as you go towards Johns Creek and they also

had a farm on Johns Creek. They divided their farm and in order to make this farm at Brandy Keg more complete and convenient they had to have that two-acre tract. It cut them off from the balance of the farm, practically the whole branch, they agreed if we would make them a deed to that two-acre lot that they would deed their interest, if they had any interest, in other words they would deed their claim to the farm on the left side of the road (the home place) to Joel Martin's second wife's heirs.''

Why the two-acre tract was conveyed to Thomas Martin and Mollie Martin (Spears) jointly instead of to Thomas Martin alone does not appear. All that is shown is that on March 23, 1903, Thomas Martin conveyed the Wells Branch tract, indefinitely described, ''excepting one-fourth interest which belongs to Mollie E. Martin,'' to his brother, W. D. Martin; and that on August 1, 1905, Mollie E. Spears and her husband, A. M. Spears, in consideration of $200, conveyed her one-fourth interest in the Wells Branch tract, indefinitely described, to W. D. Martin. Just when Mollie became of age does not appear. Neither is it shown that she received any benefit from the conveyance to her and Thomas Martin of the two-acre tract, or that she took any part in the negotiations. So far as the record shows, her deed to W. D. Martin conveyed only the undivided interest in the Wells Branch tract which she acquired through her father's deed, and while it is presumable that the Wells Branch tract, at the time she conveyed her interest therein to W. D. Martin, had been restored to its original size by the addition of the two-acre tract, it is not shown that her interest in the tract, exclusive of the two acres, was not worth $200. Mollie Spears died many years ago, and no word or act of hers is proven, other than her conveyance of her interest in the Wells Branch tract to W. D. Martin. Clearly, this was insufficient to justify a finding that she had ratified the transaction by which her undivided interest in the home place was attempted to be vested in others, or that her heirs are estopped from asserting their interest.

It would have been unnecessary, of course, to dwell upon the facts pertaining to the conveyance of the two-acre tract in relation to its asserted effect upon the claim of the Spears heirs if we had not been of the opinion that the evidence was sufficient to support the

Chancellor's finding that a deed, now lost, purporting to convey the home place, had actually been executed to the second group of children by three of the children of the first group. Our reasons for this conclusion may be summarized as follows:

J. D. Harris, who was the husband of Alice Martin, one of Joel Martin's children by his first wife, testified unequivocally that the alleged lost deed by which the adult children of the first group conveyed the home place to the second group was written in his (J. D. Harris) house by C. B. Harris, a deputy County Court clerk, and signed and acknowledged by the grantors and their respective spouses, including the witness; that it was delivered to Amy, Joel Martin's second wife, who, according to some of the witnesses, was, by the lost deed, granted a life estate in the home place; and that Mollie Martin, who did not sign the deed, was then seventeen years of age. G. W. Harris testified that he had seen and read the deed; and C. M. Ward, who married Joel Martin's widow in July, 1903, testified that he also had seen and read it, and that it disappeared from among his wife's papers some time in 1905, and could not be found after a diligent search. She died in July, 1936, before the commencement of this litigation, and we deem it unnecessary to refer to the testimony of several of her children who claim to have seen the deed, since the testimony which we have recited is strengthened, rather than overcome, by the testimony of W. D. Martin who could not remember whether there was an agreement that he and the other children of the first group would convey the home place to the second group, but admitted that he had signed a deed following his father's death at the request of C. B. Harris, the effect of which he sought to avoid by saying that it was blank when he signed it and he declined to again sign it after it had been filled in. It is true that T. J. Martin, the remaining survivor of the first group, denied executing such a deed, but Mary Harris, the only child of Alice Martin and G. W. Harris, testified that she disclaimed any interest because ''I had always been taught that I didn't own any interest or part in the land in controversy.''

We have given due consideration to appellants' arguments respecting the improbability that the older heirs would have relinquished their interest in the home place for land of considerably less monetary value. We

have also weighed and found wanting their contention that the sharing with the members of the older group of royalties on the minerals in the home place constituted a recognition by the younger group that the former owned an interest in the real estate and estops appellees from denying it. There are explanations of these seeming inconsistencies far easier to accept than would be any attempted reconciliation of the conduct and testimony of the survivors of the first group with their claims to an interest in the home place. On the whole, we are inclined to the belief that a deed to the home place was executed and delivered by the children of the first group, other than Mollie. At least, we cannot say that we have more than a doubt as to the correctness of the Chancellor's conclusion to this effect. Neither are we able to say that the Chancellor erred in denying the claim of the appellant, William R. Goble, that on December 23, 1926, he and his wife had acquired by conveyance W. D. Martin's interest in the home place for a consideration of $400, and hence was unaffected by the alleged lost deed. True, the conveyance to Goble and his wife was duly executed and recorded, but the circumstances, as well as the admissions of the parties immediately concerned, strongly indicate that he was aware of the claim of the children of the second group, and hence was not a bona fide purchaser. He was W. D. Martin's son-in-law, and admitted having an understanding with him that if Martin, who was moving to Indiana, decided to come back to Kentucky and wanted to rescind the sale, Goble would sell the property back to him for the same consideration. Goble stated that this agreement was in writing, but failed to exhibit or file it, though requested to do so. Martin, on the other hand, though reticent at first, finally admitted that it seemed to him that there was an understanding, but if their was, it was that the sale would be rescinded if Goble was dissatisfied.

We have not overlooked appellees' contention that the claim of the Spears heirs is barred by the Statute of Limitations. It is sufficient to say that since their ancestor did not sign the deed, they were joint tenants with the members of the second group, who, in the absence of an affirmative positive assertion that their holding was adverse, of which the Spears heirs had notice, are deemed to have held possession for the benefit of all concerned.

In view of the conclusions we have reached, it is unnecessary to express an opinion as to the merits of the claim asserted by the Spears heirs that their status as joint owners of the home place was established by a judgment rendered in a previous action allegedly instituted by members of the second group to enjoin third parties from cutting timber.

So much of the judgment appealed from as denies the Spears heirs an undivided interest in the home place and the royalties arising therefrom is reversed, but in all other particulars it is affirmed.